UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Aaliyah K. Lewis,                                              Case No.  3:12-cv-01720

          Plaintiff

  v.                                                                              MEMORANDUM OPINION
                                                                                              AND ORDER

Commissioner of Social Security,

          Defendant


This matter is before me on the June 19, 2013 Report and Recommendation ("R & R") of Magistrate Judge Armstrong as well as the objections by the Plaintiff and the Commissioner's response. What follows is a *de novo* review of the Magistrate Judge's findings to which the Plaintiff presents six objections. The Commissioner's response is simply that she stands on the merits of her[1] brief, that Plaintiff's objections be rejected and asks the Court to affirm the Commissioner's decision. For the reasons stated below, I adopt the Magistrate Judge's recommendations as set forth in the R & R and affirm the Commissioner's decision.

The Magistrate's forty-eight page R & R is a thorough and comprehensive discussion of the issues presented. Given the extensive background and administrative record in this case and the fact there are no objections on that issue, that portion of the R & R (Doc. No. 23 at pp.1-29) is incorporated by reference.

**STANDARD**

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.

A district court must conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also Norman v. Astrue*, 694 F.Supp.2d 738, 740 (N.D. Ohio 2010).

The district judge "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (*quoting Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). Where the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

**OBJECTIONS**

1. <u>ALJ Finding No. 4: The Sit and Stand Option</u>

At the January 2011 hearing, the ALJ questioned the Vocational Expert ("VE") via hypotheticals regarding Plaintiff's past relevant work. The ALJ proposed three hypotheticals, the first of which was the identical Residual Functioning Capacity ("RFC") determination from a prior decision[2] regarding Plaintiff. The next hypothetical was limited to sedentary exertional work with the exception of the "sit/stand option." (Doc. No. 13 at p. 70). After the VE identified three specific positions which met those requirements, the ALJ inquired as follows:

---

[2] March 24, 2004 decision by ALJ Frederick McGrath which determined the Plaintiff's disability ended on March 1, 2002. (Doc. No. 13 at p. 126).

2

> Q: Okay. Now, if those last three jobs, if there still required to be a sit/stand option where the claimant is basically doing sedentary work, but every 15 to 20 minutes would need to stand up for a minute or two, would those jobs still exist?
>
> A: That would not affect those positions.
>
> Q: And then you could just state what the customary tolerances in these jobs would be for breaks?
>
> A: Typically, a morning and afternoon break that would be scheduled of approximate duration of 15 minutes and a 30-minute scheduled lunch period. In addition to that[,] an employer would typically allow for one to two times per eight-hour shift for an unscheduled break of 10 to 15 minutes in duration. If there's breaks that exceed that typically would eliminate all employment.

(*Id.* at pp. 70-71).

Based upon this and the rest of the record, the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she must be able to alternate between positions as needed. She is able to sit, stand, or walk for at least thirty minutes at a time. In addition, the claimant is able to perform unskilled, simple, repetitive, routine tasks that do not involve a production rate pace but rather must be goal-oriented. She is not able to drive or work around unprotected heights or dangerous machinery and she must avoid concentrated exposure to loud noises or pulmonary irritants. Furthermore, the claimant's reaching is limited to a frequent basis.

(*Id.* at p. 25).

Plaintiff's objection takes issue with the sit and stand option insofar as it is not supported by the record. She contends the hypotheticals were inconsistent, as the second hypothetical was limited to "sedentary[,] exertional work" and omitted the sit and stand option. This inconsistency, argues Plaintiff, is at odds with the above finding by the ALJ. Specifically, the Plaintiff takes issue with the ALJ's finding noting, "[t]he Finding allows for no flexibility, i.e. stand or walk longer than 1-2 minutes before sitting, etc. Further and perhaps the biggest problem is the double standard contradiction both in Finding No. 4 and the ALJ's second hypothetical." (Doc. No. 24 at p. 2).

In her R & R, the Magistrate quoted SSR 96-9p, which notes the specificity of an RFC assessment "as to the frequency of the individual's need to alternate sitting and standing." POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER

3

WORK—IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, 1996 WL 274185 (July 2, 1996).

After posing the first hypothetical and getting a response from the VE as to jobs available, the ALJ inquired further asking whether this was consistent with the DOT[3]. The VE responded:

> A: It is with the exception of the sit/stand option. The DOT doesn't indicate that positions may allow for that, but these positions have been identified as being able to be performed on that basis and that's based upon my experience with job placement and labor market conditions.

(Doc. No. 13 at p. 70).

Stated differently, the DOT does not address the sit and stand option, but it was the testimony of the VE that this option exists within these positions. Thus, the ALJ's determination on this option at Finding No. 4 is not inconsistent and Plaintiff's objection on this issue is denied.

2. Reasoning Levels and VE Testimony Inconsistency[4]

Plaintiff objects to two of the three alternative jobs cited by the VE as inconsistent with the DOT reasoning levels in light of the fact Plaintiff was found capable of performing "unskilled, simple, repetitive, routine tasks that do not involve a production rate pace but rather must be goal-oriented." (Doc. No. 13 at p. 25). Additionally, the Plaintiff takes issue with VE's testimony on this issue which she claims was inconsistent with the job descriptions listed in the DOT thereby tainting the ALJ's reliance on that testimony for his determination.

I have carefully reviewed the Magistrate's R & R on the issue of the reasoning levels and find her analysis to be sound. She correctly stated that the "ALJ may rely on VE testimony even if there is an apparent conflict between the VE's testimony and the DOT" as well as citing case law from this circuit and other district courts in support of her position. (R & R at p. 45). The

---

[3] The Dictionary of Occupational Titles ("DOT") contains, among other things, job descriptions with guidelines which assist in determining whether work exists in the national economy. See, 20 C.F.R. § 404.1566(d).
[4] This objection is entitled, "MAGISTRATE'S ASSESSMENT AS TO REASONING LEVELS, MAGISTRATE'S R&R AT PAGE 45-47, IS NOT WELL-REASONED, NOT SUPPORTED BY DOT TRAILER, AND NO EXPLANATION FOR DEVIATION GIVEN BY VE AS REQUIRED BY SSR 00-4P, WHEN VE KNEW OR SHOULD HAVE INDICATED DID NOT KNOW THE REASONING LEVELS FOR ALTERNATE JOBS WHICH PER DOT WERE INCONSISTENT WITH "SIMPLE, ROUTINE AND REPETITIVE", THUS RENDERING VE TESTIMONY NOT A BASIS FOR SUPPORTRING ALJ DENIAL BY SUBSTANTIAL EVIDENCE AND REQUIRING REMAND." (Doc. No. 24, p. 3).

4

Magistrate explained the DOT Scale of General Education Development and its divisions[5]. She then explained the DOT listings as encompassing the maximum requirements for a particular position and comparing them to the reasoning levels in the DOT before noting "reasoning levels listed in the DOT reflect the maximum requirements for the jobs listed not the range of specific requirements an individual must satisfy to perform the jobs." (*Id.* at p. 46). She then cited cases in which courts or SSR rulings recognized the variance of job requirements. Finally, the Magistrate listed six separate reasons for supporting the ALJ's reliance upon the VE's testimony.

I have reviewed the transcript of the VE's testimony of January 4, 2011 and agree the VE was asked and confirmed no conflict between his testimony and the job descriptions list in the DOT. The VE was also subject to cross-examination by Plaintiff's counsel and no conflict was discerned from testimony thereby allowing the ALJ to rely on the VE's testimony. *See e.g. Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). Finally, Plaintiff's objections are essentially the same arguments as presented in her brief on the merits and offer nothing new. Therefore, Plaintiff's objections on this portion of the R & R are denied.

3. Use of *Job Browser Pro* Software

The Plaintiff challenges the VE's use of *Job Browser Pro* software in calculating the number of jobs Plaintiff could perform. Plaintiff contends the software is not based on reliable methodology.

In her R & R, the Magistrate acknowledged this software was not included in a list of published sources in 20 C.F.R. § 404.1566(d)[6], which addresses "administrative notice of reliable job information." Having carefully reviewed the transcript, the Magistrate correctly concluded that the VE in this case "presented an alternate finding regarding the number of relevant jobs available in this economy." (Doc. No. 23 at p. 45). At the hearing, the VE explained his process of calculation

---

[5] Including Reasoning Development, Mathematical Development and Language Development as contained in the *Department of Labor, Dictionary of Occupational Titles*, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed. rev'd 1991).
[6] The regulation states examples which will be given notice, include: "(1) Dictionary of Occupational Titles, published by the Department of Labor; (2) County Business Patters, published by the Bureau of the Census; (3) Census Reports, also published by the Bureau of the Census; (4) Occupational Analyses, prepared for the Social Security Administration by various State employment agencies; and (5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics." The language introducing these sources does not exclude other sources.

5

beginning with the "primary numbers" coming from the Bureau of Labor Statistics. He then explained using the software which "takes a look at the OES statistics and the O*NET information and then breaks it down by DOT and then allows you to take a look at the occupational density of each DOT title and relate that to the DOT title and then looks at the Bureau of Labor Statistics as a component of that." (Doc. No. 13 at p. 79). The VE also stated using the software program was "based upon the typical types of resource materials" he utilizes. (*Id.*)

Other courts have upheld use of this software in instances where it was one of many resources utilized by a VE in making their assessment. *See Drossman v. Astrue*, 2011 WL 4496561 (N.D. Ohio 2011); *Villareal v. Colvin*, 2013 WL 3071259 *6 (C.D. Cal. June 18, 2013); *Valenzuela v. Colvin*, 2013 WL 2285232 n.3 (C.D Cal. May 23, 2013) *But see Dorman v. Social Sec. Admin.*, 2013 WL 4238315 *8 (D. Mass. May 21, 2013) (rejecting VE's job number testimony as it was solely based on the software and not on the expertise of the witness).

As the VE in this case utilized the software in conjunction with other resources, I agree with the Magistrate "that the ALJ could rely on the VE's job incidence figures derived from *Job Browser Pro* considering the jobs were then filtered through his own professional experience, judgment and expertise before endorsing the numbers provided." (Doc. No. 23 at p. 45). Plaintiff's objections on the reliability of the software are denied.

4. Jobs

In her fourth objection, the Plaintiff challenges the Magistrate's evaluation and conclusions on the number of alternative jobs as in error, that the number of jobs is not significant nor is it supported by substantial evidence. Plaintiff relies on her objections aimed at the hypothetical with the sit and stand option, the reasoning levels and the use of the *Job Browser* software. All of these objections have been addressed above and determined to be without merit.

6

Plaintiff challenges the improper application of the *Hall* factors[7] in this case based upon the above objections. The ALJ considered all the Plaintiff's RFC and found her "ability to perform all or substantially all of the requirements of this level of [sedentary] work has been impeded by additional limitations." (Doc. No. 13 at p. 32). Relying on the VE's responses to the inquiry, the ALJ specified three representative occupations supported with both with local and national numbers. Locally, the numbers identified by the VE were 1,000 for telephone clerk, 800 for assembler and 4,000 for an order clerk. I do not find these numbers to be insignificant based upon the testimony at the hearing and the ALJ's analysis. Accordingly, I agree with the Magistrate's recommendation on the number of jobs and deny Plaintiff's objections.

5. <u>Side Effects of Plaintiff's Medication</u>

The Plaintiff takes issue with the Magistrate's assessment of the side effects of medication. The Plaintiff cites to several instances in the record in which health care providers noted side effects. Promoting only on those portions of the record which supports Plaintiff position does not tell the entire story. Many of these side effect notations were self-reported by the Plaintiff to the health care providers. The record also contains instances where Plaintiff was monitored for medication maintenance over a significant period of time with little or no complaints of side effects nor were any observed by the medical personnel. (Doc. No. 13 pp. 973-1030).

The Magistrate correctly determined that the ALJ considered the evidence regarding side effects and was within his right to discount Plaintiff's credibility on this issue. The ALJ did not discount Plaintiff's credibility merely on her testimony at the hearing but considered evidence from every medical or mental health treatment provider and consultant. The ALJ also gave reasons why more or less weight was given to a particular opinion. For example, he gave great weight to the opinions from the Harbor Behavioral physicians because their opinions were "supported by the medical record as a whole." (*Id.* at p. 30).

---

[7] *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), considered the following criteria: "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work. . ."

7

Here, the Magistrate correctly determined that substantial evidence in the record as a whole supported the ALJ's determination on the side effects of medication. *See Calvin v. Comm'r of Soc. Sec.*, 437 Fed. Appx. 370 at *2 (6th Cir. 2011). As the ALJ's decision reflected consideration of the entire record and complied with the correct legal standard, I cannot find the Plaintiff's objections to be well taken.

6. GAF Scores

The Plaintiff's final objection centers on the ALJ's treatment of the Plaintiff's GAF scores under 50. Specifically, she takes issue with ALJ's rejection of Dr. Robie's GAF score of 48.

The Magistrate correctly set forth the factors taken into consideration for a Global Assessment of Functioning ("GAF") score. (Doc. No. 23 at p. 38). As noted by the American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000), the GAF "is for reporting the clinician's judgment of the individual's overall level of functioning." *Id.* at 32. In making the assessment, the clinician is given the following guidance:

> The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning. The instructions specify, "Do not include impairment in functioning due to physical (or environmental) limitations."

*Id.*

In the ALJ's decision, he discussed the GAF scores assigned to Dr. Robie and the providers at Harbor Behavioral. The ALJ gave some weight to Dr. Robie's assessment regarding limitations noting that Dr. Robie only saw Plaintiff once for a mental assessment in April 2008. (Doc. No. 13 at p. 31). The ALJ gave more weight to the GAF scores assigned by the treating psychologists at Harbor Behavior as the Plaintiff received treatment there beginning in 2006 through August 2009. The ALJ properly considered the record as a whole when he noted the providers at Harbor Behavior assessed Plaintiff with "(GAF) scores ranging from 50-65." (*Id.* at 30). *See Oliver v. Comm'r of Soc. Sec.*, 415 Fed. Appx. 681, 684 (6th Cir. 2011) (ALJ properly discounted reliance on a low GAF score from a non-treating source when evidence in the record from other examining specialists was

8

consistent with the evidence in the record as a whole).  The Magistrate's assessment that the ALJ's decision was supported by substantial evidence is correct and the ALJ explained the basis for the weight accorded to each professional assessment.  Plaintiff's objections as to the GAF score determination is without merit.

## CONCLUSION

Having considered the objections presented, I adopt the June 19, 2013, R & R in its entirety and deny Plaintiff's objections therein.  The Commissioner's decision denying SSI benefits is affirmed.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge